STATE *vs.* MAINE CENTRAL RAILROAD COMPANY.

Franklin.   Opinion December 10, 1888.

*Railroads.   Loss of Life.   Negligence.   Evidence.*

A passenger on a railroad excursion train, which was running rapidly in a dark night on a road of frequent and sharp curves, having been last noticed alive whilst he was passing through a car in which there were vacant seats, about mid-way of the train, saying or doing nothing to indicate where on the train he was going or the purpose of going, was found dead the next morning, lying on the track between the rails, his body being in a mutilated condition, at or near the place of a sharp curve in the road. There was at the time a saloon-car hitched to the rear of the train, not annexed for the use of passengers, but presumably to be transported to a station on the road. The passenger cars were connected closely with one another by the Miller platform, but the saloon-car was attached to the train in such a manner as to leave an open space between it and the preceding car eighteen inches wide. The allegation is that the passenger while exercising due care on his part fell through this open space between cars, and was thereby killed by the negligence of the defendants. *Held :* That the facts stated do not prove that the passenger, while exercising due care, was killed in the manner alleged.

It is some evidence of negligence on the part of a passenger that he undertakes to pass through a train of cars while the train is moving rapidly in the night time, unless it may be reasonably inferred that he has some excuse for so doing more than mere restlessness or curiosity.

ON REPORT.

Indictment against defendant corporation for causing the death of one Lawrence J. Garcelon August 20, 1886. The defendant pleaded not guilty.

After the evidence for the state was out, and the state rested, the court ordered a nonsuit, upon motion of defendants' counsel, with the stipulation that if the law court were of the opinion that the evidence was sufficient to warrant a verdict for the state, the case should be sent back for trial.

*F. E. Timberlake*, county attorney, for the state, *E. O. Greenleaf*, with him.

The court erred in directing a nonsuit; there were questions of fact for the jury.

We are aware that, though the rule be a hard one, the burden of proof is upon the prosecution to free itself from contributory negligence, as well as to prove the negligence of the defendant; yet when a material fact is not proved by direct testimony, but is left to be inferred from the facts directly sworn to, the inference need not be a necessary one. *Commonwealth* v. *Doherty*, 137 Mass. 245.

In this case now before the court, it is shown that the deceased was last seen two or three cars from the rear going toward the rear of the train, just as other passengers, whom all would agree were prudent, are wont to do. The condition of the cars was shown, the distance between the platforms, the odd condition of the rear car, the long shackling and distance from other car, darkness upon the platforms, want of proper guards, and want of brakeman or other employes of the company,—these all were facts proven by which the jury might properly infer due care on the part of the deceased.

It has been well said that the best evidence of due care in case of instant death is lost.

The burden of proof may be aided and sustained by the pre-

sumption that arises upon the facts. *Stevens* v. *E. & N. A. Railway*, 66 Maine, 74.

The presiding justice here attempted to weigh the evidence and say that the government had not proved the fact that the defendant was negligent in placing this old car in the manner shown upon their train, and that the deceased was in the exercise of due care or common prudence, or even such a state of facts as the jury might legitimately draw such inference.

A fact proved by a legitimate inference is proved no less than when it is directly sworn to. *Doyle* v. *B. & A. R. R. Co.*, 145 Mass. 386, and cases there cited.

While due care must be shown by the plaintiff, it is not necessary that any positive act of care shall be proved. It may be inferred from mere absence of fault, when sufficient circumstances are shown to fairly exclude the idea of negligence on his part. *Maguire* v. *Fitchburg R. R. Co.*, 146 Mass. 379.

The presiding justice in the case last cited attempted to settle the whole case by directing a verdict for the defendant, but the full court say the question as to whether the deceased was in the exercise of due care should have been submitted to the jury.

Inferences are for the jury. *Cook* v. *Brown*, 39 Maine, 443.

One of the elements of this case is negligence, and cannot be considered a pure question of law and be taken from the jury, but is a mixed question of law and fact, and must be submitted to the jury. *Foot* v. *Wiswall*, 14 Johns. 304.

Presumptions from evidence of the existence of particular facts, are mixed questions of law and fact, and the jury are judges of fact. *Bank of U. S.* v. *Corcoran*, 2 Pet. 121.

The court in *Lesan* v. *M. C. R. R. Co.*, 77 Maine, 85, caution moderation in taking such cases from the jury, even though all the evidence comes from the plaintiff's side, and say the case should go to the jury.

Again, in *Shannon* v. *Boston & Albany R. R. Co.*, 78 Maine, 52, the court, in the able opinion of his Honor, Peters, C. J., say the usual practice is to submit the case to the jury.

What we claim in this case is that there are facts sufficiently proven to satisfy the jury, directly or indirectly, that there was

no want of due care on the part of the injured party, and if there was any want it did not in any way contribute to the injury, and that this question should have been left to the jury under proper instructions from the presiding justice.

The injured party may not perhaps be strictly in the exercise of due care, but did that want of care contribute to the injury ? Moreover, though the deceased may have been guilty of contributory negligence (the contrary of which we claim this evidence shows), yet if the defendant could in the result, by the exercise of ordinary care, have avoided the mischief, it will not excuse the defendant. *Richmond & Danville R. R. Co.* v. *Anderson,* 31 Am. Rep. 750. (31 Gratt. 812.) Under this we claim the defendant, by properly guarded and properly lighted car and platforms, might have avoided this injury.

The surrounding circumstances, and the whole conduct of the deceased in reference thereto, afford ground for a variety of inferences as to make the verdict of the jury the only proper means to determine the essential fact. *Mayo* v. *B. & M. R. R.,* 104 Mass. 137.

The statute was designed in part to impose a punishment for the carelessness of the defendant, and the Mass. court say under a similar statute, that want of due care on the part of the passenger killed, is not a defense to such indictment. *Commonwealth* v. *Boston & Lowell R. R. Cor.,* 134 Mass. 211, and cases there cited.

That may differ somewhat from this case, but in *Same* v. *Same,* 126 Mass. 61, the court say the burden is upon the commonwealth to show that the persons killed were in the exercise of due care and diligence, but this burden is sustained by proving facts and circumstances, from which it may be fairly inferred.

The functions of the court and jury are distinct, and issues of fact must be submitted to the determination of the jury.

R. S., c. 82, § 40, provides that the presiding justice may in some cases set aside the verdict, but if the justice has the power and duty of directing a verdict according as the evidence in his opinion demands, it is difficult to understand when an occasion could arise for the exercise of the power conferred upon him by this statute.

The statute is wholly unnecessary.

While the authorities differ somewhat as to the amount of proof in cases of this kind, they all agree upon the manner in which it may be shown, viz.: that the jury is the proper tribunal to adjudicate upon the facts and the inferences drawn therefrom.

*Frye, Cotton and White,* for defendants.

It is difficult to imagine upon what grounds the state seeks to maintain this indictment.

To maintain it, they must show :

First, an accident, resulting in instant death.

Second, negligence on the part of the defendant corporation.

Third, due care on the part of the deceased at the time of the accident.

At best they have only shown an accident. There is no evidence showing that death was instantaneous. Upon this point the case of *Corcoran* v. *Boston & Albany R. Co.,* 133 Mass. 507, is important, for there as here the question was whether death was instantaneous.

In that case the burden of proof was on the plaintiff to show that the death was not instantaneous, and the court directed a nonsuit.

Here the burden of proof is upon the plaintiff, to show that death was instantaneous. *State* v. *Grand Trunk Railway,* 61 Maine, 114.

This important question is left to conjecture, with the argument drawn from the nature of the injuries as described by the doctor entirely in favor of the theory that death was not instantaneous.

No negligence on the part of the defendants is shown. The defendant's cars were properly lighted, properly constructed, and properly officered. But they say there was a saloon car attached to the rear car, that the platform of the saloon was some inches lower than the platform of the car to which it was attached, and that there was a space of about a foot and a half between the two platforms, and then they assume that the deceased attempted to pass from one to the other, and fell through between the cars and was killed.

It was not negligence to attach this saloon to the rear of the train. There is no evidence that the saloon was any different in the construction of its platform from ordinary saloon cars of this kind, nor was there any invitation to, nor any necessity shown for, passengers to go to this car.

And second, if he did make the attempt, then he was not in the exercise of due care himself.

When a railroad passenger goes from one car to another of a rapidly moving train merely for his own convenience, he takes upon himself the risk of all accidents not arising from any negligence of the company. *Stewart* v. *Boston & Prov. R. R. Co.*, 146 Mass. 605.

It is well settled that a party cannot recover for injuries caused by negligence, if he himself failed to exercise proper care, and his own negligence contributed to the result. It is also well settled that the plaintiff must show affirmatively that he was in the exercise of due care upon his part. *Hickey* v. *Boston & Lowell R. R.*, 14 Allen, 429, 431; *State* v. *Maine Central R. R.*, 76 Maine, 357, 364.

If the injury happen while the party is occupying a place provided for the accommodation of passengers, nothing further is ordinarily necessary to show due care. But when the plaintiff's own evidence shows that he had left the place assigned for passengers and was occupying an exposed position, he must necessarily fail, unless he can also make it appear, upon some ground of necessity or propriety, that his being in that position was consistent with the exercise of proper caution and care on his part. *Hickey* v. *B. & L. R. R.*, *supra.*

Was there any necessity or propriety shown for this young man leaving his seat in the car, where he would have rode in safety to his home, and going in the darkness of the night and when the train was running at a rapid rate between stations, to this saloon? After all, it is entirely a matter of conjecture whether he went there at all, but even if he did, every man of common sense in these days knows that the platform of a swiftly moving train is a dangerous place, even in the day time, and much more so in the night, when nothing can be seen. And we do not see that it

makes any difference whether he knew the special danger of crossing this platform or not, for if he knew it and voluntarily made the attempt to get across, then he assumed all the risks incident to the attempt, and if he did not know it, he was guilty of the grossest negligence in attempting to pass over there. It must not be forgotten that his home was Farmington, and presumably he was familiar with the stations on this road, and if he desired to go to this saloon for any purpose, he must have known that by waiting a very few minutes he would have reached the North Jay station, where he could have crossed in perfect safety.

See also : *Gavett* v. *M. & L. R. R.*, 16 Gray, pp. 501, 505, 506, 507 ; *Todd* v. *Old Colony R. R. Co.*, 3 Allen, 18 ; *Penn. R. R. Co.* v. *Langdon*, 37 Am. Rep., 651. (92 Penn. St. 21.)

PETERS, C. J. The defendants are indicted for causing the death of Lawrence J. Garcelon by their negligence. The alleged negligence is that a saloon car was attached to a train of passenger cars in such a manner that a space was left between the saloon car and the car in front of it, through which the deceased fell. He was a passenger on an excursion train returning from Old Orchard to Farmington, and was last seen, at the station of Livermore Falls, by another passenger who says he saw him at that station getting on the train just as it was put in motion. Other passengers saw him before reaching Livermore Falls, passing through a car in the direction of the rear of the train, about midway of the train. Nothing more was seen or heard of him until his dead body was discovered on the track by section men on the next morning. There was nothing said or done by him indicating any purpose of going to the rear of the train. There was no necessity for his going there. There were vacant seats in the passenger cars. The night was dark, and the train was moving rapidly between stations. His body was found about four miles from Livermore Falls station and on the homeward side of still another station which had been touched by the train, on the track about midway between the rails, at a point in the road where there is quite a sharp curve, lying on his back, with his legs drawn

up and his left arm crushed above the elbow joint. There was no fracture of the skull, but there was a scalp wound on the back of his head, and there were bruises on his left side, and his clothing was badly torn.

The plaintiff contends that it is inferentially and circumstantially proved that the death was caused by the deceased falling between the saloon and a passenger car, the space between the two being by the estimation of witnesses about one foot and a half wide. The grounds upon which the inference is to be based, are that he could not have fallen between any of the passenger cars because they were closely connected by the Miller patent platforms, and because his body would not have been found on the track if he had been thrown sideways of any of the platforms between passenger cars. And it is contended that this position is strengthened by the circumstance that the deceased was thrown from the train at or near a curve in the road, where the motion of the cars would combine with the Miller platforms in preventing the body from falling upon the track, if the fall had been between passenger cars.

Whilst there may be some plausibility in these suggestions, they seem to us to fall short of establishing the alleged negligence, and that the death was caused thereby. It cannot be considered more than conjecture that the death was caused in the manner alleged. There are many ways in which the accident might be produced without any blame on the part of the defendants. He may not have been instantly killed, and in an insensible condition may have got himself upon the track after the injury, or may have been carried there by his clothing being caught by some part of the car or its running gear, and whether the motion of the train would carry him off the track or upon it would somewhat depend upon the resistance he may have at the moment exerted against falling, and the manner of such resistance, and other explanations or suppositions about the matter might be possible.

Moreover, no one knows, nor is there a thing to indicate, what care he was exercising, or what he was doing or attempting to do, at the time of the accident. There were persons in the saloon car, and they saw or heard nothing which led them to suppose

there had been this catastrophe.   As before intimated, there seems to have been no occasion for his going to the saloon car.   That car was evidently not intended for the use of passengers on that day, and was hitched to the train at Leeds Junction, to be transported to the upper end of the railroad route.

Further, we think it some evidence of carelessness on the part of the deceased, that he was rambling through the cars on such an occasion, in a dark night when the train was running swiftly, on a road having frequent and sharp curves, unless there be some excuse or justification for it more than mere restlessness or curiosity.   Persons traveling on railroads should know something about cars and trains and their movements, and of the impropriety of exposing themselves unnecessarily to danger.   It has been frequently held that it is improper for a passenger to loiter on the platform of a moving car, and passing from car to car is just as hazardous.

There is no need of our noticing the point, whether it was improper to transport the saloon car in that way on that night, or not.   That question we pass as immaterial to the result.

*Nonsuit confirmed.*

WALTON, DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.